# WHEELING.

Nimick & Co. *v.* Mingo Iron Works Co.

Submitted January 29, 1883.—Decided November 29, 1884.

A manufacturing company incorporated and organized under the laws of the State of Ohio, which imposed on the stockholders of such company an individual liability in addition to their stock equal to the amount of the stock held by each of them, as a security to its creditors for the payment of the debts of the corporation, having become insolvent, one of its judgment-creditors on his own behalf, and for the benefit of all other creditors, instituted his suit in the municipal court of Wheeling against said corporation and certain of its stockholders residing within the jurisdiction of that court, to ascertain and determine the extent of the personal liability resting upon each of them for the pay-

ment of the debts of the corporation, and to enforce payment of the same. To this bill the defendant stockholders demurred, and the court sustained the demurrer, and dismissed the bill with costs. Upon an appeal to this Court, it was HELD:

I. That the stockholders of such a corporation are individually liable to the creditors thereof, if the same be necessary for the payment of its debts, in addition to their stocks in an amount equal to the stock by them subscribed or otherwise acquired. (p. 198.)

II. That this liability is not in the nature of a penalty or forfeiture, but it arises out of the implied promise of the stockholder to assume and discharge the individual liability imposed by the statute, under which the corporation was created. (p. 198.)

III. That this liability is not a primary resource or fund for the payment of the debts of the corporation ; that it is collateral and conditional to the principal obligation which rests upon the corporation, and is to be resorted to by the creditors only in case of the insolvency of the corporation, or when payment cannot be enforced against it by the ordinary process. (p. 198.)

IV. That this liability is a security provided by law for the exclusive benefit of the creditors, over which the corporate authorities can have no control; and that this liability is several in its nature, but the right arising out of it is intended for the common and equal benefit of all creditors of the corporation. (p. 198.)

V. That in any suit instituted for the purpose of enforcing this liability against the stockholders the corporation is a necessary party. (p. 198.)

VI. That the statute-law of Ohio, under which such corporation was created, imposing on such stockholders such individual liability, not only conferred upon its creditors a new right but also prescribed the remedy whereby the same may be enforced. (p. 202.)

VII. That the remedy so prescribed for the ascertainment and enforcement of this liability must be pursued in the courts of the State of Ohio, where the corporation was located, and by the local statutes of which alone the liability exists. (p 203.)

VIII. That a bill in equity to ascertain and determine the extent of this individual liability against the stockholders of such corporation cannot be sustained in the courts of this State. (p. 207 )

IX. That in the interpretation of the statutes of another State this Court will adopt the construction given to such statutes by the highest judicial tribunal of such State, unless the same be in contravention of the constitution of the United States. (p. 192.)

Statement of the case by WOODS, JUDGE:

This was a chancery suit brought in the municipal court of Wheeling, in January, 1881, against the Mingo Iron Works Company and forty-eight other defendants, alleged to be stockholders therein, by Alexander Nimick, George P. McBride and John S. Slagle, partners trading under the firm of Nimick & Co., suing for themselves and on behalf of all other creditors of said Mingo Iron Works Company, who would come in and contribute to the expenses of this suit.

The plaintiffs' original bill was demurred to, and the demurrer was sustained, and the plaintiffs took leave to file an amended bill, which was filed at April rules, 1882. The plaintiffs alleged in their original and amended bills that the defendant, The Mingo Iron Works Company is a corporation lawfully incorporated and organized on or about the 13th of February, 1871, under and by virtue of the constitution and laws of Ohio, for the purpose of mining coal and other minerals and manufacturing pig iron, nails and iron, and carrying on such business as is usually connected therewith, as authorized by an act to provide for the creation and regulation of incorporated companies in the State of Ohio passed May 1, 1852, and the acts amendatory and supplementary thereto; that said corporation had a capital stock of $250,000.00 divided into shares of $100.00 each, which were owned by certain stockholders named in the bill, of which said forty-eight defendants owned in the aggregate 1,755 shares, all of which stock was owned by said several stockholders, at the times when the debts hereinafter mentioned were contracted, and at the time this suit was brought; that of these forty-eight stockholders, thirty-four particularly mentioned in the bill owning in the aggregate 1,415½ shares of said capital stock, are residents of the city of Wheeling, county of Ohio, and State of West Virginia, and are within the jurisdiction of the said municipal court of Wheeling, but out of the jurisdiction of the courts of the State of Ohio; and that the others of said

stockholders are residents of other States, and out of and beyond the jurisdiction of said municipal court. The plaintiffs further allege, that the said corporation in the conduct of its business became largely indebted to various creditors, and among them to the plaintiffs to the amount of $24,504.86, for which they recovered against it, in the court of common pleas of Jefferson county, Ohio, in which were the principal office and place of business of said corporation, a judgment at the November term, 1878, of said court, all of which remains unsatisfied except $1,292.59 paid thereon on the 16th of April, 1880, by the assignee of said corporation; that all of the real and personal property of said corporation, has been sold under proper judicial proceedings in the State of Ohio, and the proceeds applied to the payment of its debts, and that the debts due from said corporation still unpaid, amount to $280,000.00, including the debt due to the plaintiffs.

They further allege that by the third section of the thirteenth article of the constitution of the State of Ohio, it is provided that, " dues from corporations shall be secured by such individual liability of the stockholders and other means as may be prescribed by law; but in all cases each stockholder shall be liable over and above the stock by him or her owned, and any amount unpaid thereon, to a further sum at least equal in amount to such stock, and that by the said act of the Legislature of Ohio, passed May 1, 1852, and the acts amendatory and supplementary thereto, it is further provided that " the stockholders of a corporation which may be hereafter formed, and such stockholders as are now liable under former statutes, shall be deemed and held liable in addition to their stock in amount equal to the stock by them subscribed, or otherwise acquired, to the creditors of the corporation to secure the payment of the debts and liabilities of the corporation ;" and that said constitutional provision, and the said statutes, at the time of the organization of said corporation, and at the time of the institution of the plaintiffs' suit were in full force, and they allege that the unpaid debts due from said corporation are greater in amount than the whole amount of its capital stock, and that by virtue of the said constitution and laws of the State of Ohio, the stockholders of said corporation are severally liable to its said unpaid creditors, in amounts equal to

the amount of the several shares of its stock held by them respectively, for the joint and equal benefit of all of said creditors, in proportion to the amount of their several debts, and that this liability arises out of the contract incident to the ownership of stock in said corporation under the laws of Ohio; and that each of said stockholders therein, at the time he became such stockholder in said corporation bound himself to its creditors for the payment of all its debts, in an amount equal to the stock owned by him in addition to said stock, and that all of said debts were contracted on the faith of said liability; that on January 29, 1878, all of the real estate of said corporation was sold under proper judicial proceedings in the court of common pleas of Jefferson county, Ohio, and the proceeds properly applied in part satisfaction of its preferred indebtedness; that on July 10, 1878, said corporation made to the defendant George A. Dean, one of the stockholders, owning one share of said capital stock, an assignment in writing under the insolvent laws of Ohio, of all its property for the benefit of its creditors, and that Dean accepted said trust, and is now acting as such assignee of said corporation, and they aver that its entire assets in his hands when collected, will not, after payment of costs and expenses, exceed $1,000.00 for distribution among its creditors, but that said trust has not yet been settled or executed. The plaintiffs file with and as part of their bill, a list of seventy-six of the creditors of the corporation, embracing more than onehundred and twenty-five different claims, ranging in amounts from $2.50 to $60,000.00.

The plaintiffs further allege that on the 7th of May, 1879, they brought suit on behalf of themselves, and all other creditors of the The Mingo Iron Works Company, in the court of common pleas of Jefferson county, Ohio, against all the parties in this suit, except certain of the stockholders particularly named in their bill, and that in that suit in Ohio, "they exhausted the process of the Ohio court, and took every step which could lawfully have been taken, to obtain jurisdiction for that court over all of the parties against whom that suit was brought, but only succeeded in obtaining jurisdiction over said corporation and fifteen of said stockholders, named in the plaintiff's bill in this suit, who owned in the

aggregate 793½ shares of said capital stock, all of the other defendants to that suit in Ohio being then, and now non-residents of the State of Ohio, and without the jurisdiction of the courts of Ohio, that the object and purpose of said suit in Ohio were similar to those of the present suit, being to enforce the said liability under the said Ohio laws, of the stockholders of The Mingo Iron Works Company;" and that in such suit, such proceedings were had, that a decree was entered therein, by the said court of common pleas, against the said parties herein named, as those over whom that court had acquired jurisdiction, ascertaining that the outstanding debts of said corporation exceeded all of its assets by a sum equal to all the stock held by its stockholders, affirming the liability of each of its last named stockholders over whom it had so acquired jurisdiction, for an amount equal to the amount of said stock held by them respectively, and decreeing in favor of the plaintiffs and other creditors of said company, and against each of the last named fifteen stockholders, in that amount, which decree still remains in full force and unreversed; and the plaintiffs aver, that it will require the entire amount of the additional statutory liability of each and all of said stockholders to meet and pay said indebtedness, as neither the said corporation nor its stockholders have paid said indebtedness, or made any provision therefor, within the limits of their individual liability aforesaid. The Mingo Iron Works Company, and all of its stockholders, except two who died insolvent in Ohio, and except the fifteen over whom the said Ohio court obtained jurisdiction and against whom it entered said decree, and except said George A. Dean in his fiduciary capacity as assignee as aforesaid, are made defendants in this suit; and the plaintiffs pray, that a receiver may be appointed and qualified in this suit; that the amount due on the plaintiff's judgment may be ascertained; that an account be taken, ascertaining who are stockholders in said corporation; the amount of stock owned by each stockholder, the amount of *bona fide* debts due from said corporation, and to whom due, that an account be taken of the assets and funds of said corporation in the hands of said George A. Dean, assignee of said corporation applicable to the payment of its debts; that the amount of

the assessment necessary to be collected from each stock-holder to pay said debts, not exceeding in amount a sum equal in amount to the stock owned by each stockholder, may be ascertained; that the stockholders may be decreed to pay such assessment to the receiver for the benefit of said creditors and for general relief.

Eleven other individuals and firms claiming to be simple contract creditors of said corporation, for large amounts upon their several petitions filed for the purpose, were admitted as co-plaintiffs in this cause. On the 10th of June, 1882, John Bruce, and twenty-four other defendants, who were alleged to be stockholders in said corporation residing in this State, who had demurred to said original bill, again appeared and demurred to the plaintiff's amended bill, upon which demurrers the court entered its final decree, which concluded with these words: " On consideration whereof it is adjudged, ordered and decreed that the said demurrers be sustained, and the parties complainant abiding by this amended bill, not desiring to further amend the same it is further adjudged, ordered and decreed, that the same be dismissed at the costs of the parties complainant."

From this decree the plaintiffs appealed to this Court.

*W. P. Hubbard* and *H. M. Russell* for appellants.

*D. Lamb, R. White* and *Caldwell & Caldwell* for appellee.

WOODS, JUDGE:

The transcript of the record in this case presents for our consideration several interesting and important questions. The plaintiff's bill has been prepared with the greatest care and precision, and the briefs of the learned counsel on both sides of this controversy have left but little ground unexplored.

It is contended by the counsel for the appellants that as the Mingo Iron Works Company is a corporation created and existing under and by virtue of the constitution and statute-laws of Ohio, which provides "that the stockholders of such a corporation, shall be deemed and held liable in addition to their stock in an amount equal to the stock by them sub-

scribed, or otherwise acquired, to the creditors of the corporation to secure the payment of the debts and liabilities of the corporation,"—that the several stockholders thereof are bound by the terms of their charter, as well as by their implied contract, to pay to the creditors of the corporation in part satisfaction of their several demands, if the same be needed for that purpose,—an amount equal to the amount of stock held by them respectively, in addition to said stock, and that this implied contract may be enforced against said stockholders in the courts of this State, *if any of said stockholders reside here*, and by parity of reasoning, in the courts of any and every State wherein any of said stockholders may reside. It is admitted that the statute-laws of the State of Ohio, have no extra-territorial force; but it is insisted by the appellant's counsel, that upon the principle of comity, which is a part of the laws of nations, effect will be given in one State or country to the statute-laws of another, upon questions of contract and rights of action depending upon or connected with such foreign laws, and many authorities are cited in support thereof, and they insist that "if the liability sought to be enforced is in the nature of a contract and is not opposed to the legislation or policy of the State in which it is sought to be enforced, the courts of such State will give effect to it."

On the other hand the counsel for the defendant stockholders contend that the individual liability created by the law of Ohio, does not arise out of contract, but is strictly a statutory liability in the nature of a penalty imposed upon the stockholders for permitting the corporation to incur debts which it is unable to discharge, or if the individual liability can be justly said to arise out of contract, yet stockholders are not originally and primarily bound, but on the contrary they are only conditionally and collaterally liable, in case the corporation becomes insolvent, or where payment cannot be enforced against it by ordinary process; and that if said liability does arise out of contract, and is a conditional and collateral security to the creditors for the payment of their debts, yet the only available remedy, if any exists, to enforce this individual liability, is prescribed by the laws of Ohio, and must be sought in her courts;

and that the courts of this State are wholly unable to afford the plaintiffs the relief prayed for. And they further insist in argument, that if such individual liability of the stockholders was imposed by the laws of Ohio, and assumed by stockholders when they respectively became the owners of said stock, yet such liability ought not to be enforced by the courts of this State against her citizens, who are stockholders in said corporation, because the laws of Ohio in this respect are in conflict with the policy of this State on the same subject. The Mingo Iron Works Company, is a corporation created under section 3258 of the Revised Statutes of Ohio. The character of the individual liability thereby created has been considered and judicially determined by the supreme court of Ohio, and we recognize the rulings of that court upon the interpretation of that statute, as binding authority on us whenever such question properly arises in our courts. It has long been the settled rule in this country, in the Federal as well as in the State courts that the decisions of the courts of a State are controling authority in reference to its local statutes, except in special cases, and that it is the peculiar province of the supreme court of a State to interpret its organic law as well as its statutes. *Elmendorf* v. *Taylor*, 10 Wheat. 152; *Shelby* v. *Gray*, 11 *Id.* 367; *Town of South Ottowa* v. *Perkins*, 94 U. S. 260; *Jessup, &c.* v. *Carnegie, &c.*, 80 N. Y. 441.

In the case of *Wright, &c.* v. *McCormick, &c.*, 17 Ohio, it was decided by the supreme court of Ohio, that the individual " liability, thus imposed on stockholders is not a primary resource or fund for the payment of the debts of the corporation. It is collateral and conditional to the principal obligation which rests on the corporation, and is to be resorted to by the creditors only in case of the insolvency of the corporation, or where payment cannot be enforced against it by the ordinary process. It is a security provided by law for the exclusive benefit of the creditors, over which the corporate authorities can have no control."

In *Umsted* v. *Buskick*, which was a petition in the nature of a bill in equity filed by a judgment-creditor of an insolvent corporation to obtain satisfaction of his judgment by the enforcement of the statute liability of the several stockhold-

ers, the same court held that the liability imposed by section 78 of the act for the creation and regulation of incorporated campanies in the State of Ohio (which was in effect the same as section 3,258 *supra*) on the stockholders of certain corporations therein named in addition to their stock subscribed, is a security provided by law for the exclusive benefit of the creditors, over which the corporate authorities can have no control, and that a suit of a creditor to enforce such liability should, under the statute, be for the benefit of all the creditors, and that the stockholders whose liability is sought to be enforced have the right to insist on their co-stockholders being made parties for the purpose of general account, and to enforce from them contribution in proportion to their shares of stock, and that in such a suit, the *corporation ought to be made a party.* 17 *Ohio S.* 113. At the time the last named two cases were decided, the statute of Ohio under which such liability arose contained no provision in regard to the manner in which this liability was to be enforced. But since that time this apparent defect in the law of Ohio has been remedied by the enactment of section 3,260 of the Revised Statutes which prescribes the mode in which this liability may be enforced.

The construction of said section 3,258, was again before the supreme court of Ohio, in the case of *Hawkins* v. *Furnace Co.*, 40 Ohio 507, decided at January term, 1884. This was a petition in the form prescribed by said section 3,260, filed by a creditor of the Iron Valley Furnace Company, a corporation created under the laws of Ohio against it and its stockholders, to enforce this personal liability for the payment of the plaintiff's demand. The defence was the statute of limitation, and the question was whether this individual liability was within the six years limitation, either as a liability created by statute, or an implied promise? The court held that the action was governed by the limitation act of 1852 (S. C. 948). One of its provisions is this :

" Within six years,

"An action upon a contract not in writing, express or implied."

"An action upon a liability created by statute other than a forfeiture or penalty"—and the court were of opinion and

held that the action fell within this limitation of six years, and is properly of the class described in the latter clause, and that it also embraces the elements of an implied contract. The court in this case defined the phrase, "a liability created by a statute," to mean a liability which would not exist, but for the statute; and added that in this case we find a promise running with the statute liability. The assumpsit is an incident of the statute liability. But the inherent and superior force of the statute creates the obligation without regard to the promise raised by implication—and both the liability and promise were barred.

The case of *Carrol, &c.* v. *Green, &c.* reported in 92 U. S. 509—was a bill filed in June, 1872—by the creditors of the Exchange Bank of Columbia, S. C., which failed in February, 1865, to enforce their claims against the stockholders under a clause of the charter, which upon the failure of the bank rendered them individually liable for any sum not exceeding double the value of their respective shares; the defence set up, was the statute of limitations which required actions on the case, and actions of debt, grounded on any contract without specialty to be brought within four years; and the court held that as the liability of the stockholders arose from their acceptance of the act creating the corporation, and their implied promise to fulfil its requirements, the proper remedy was an action on the case; and that as the statute barred such an action at law, it is also a good defence in equity.

The case of *Corning* v. *McCulloch*, 1 Comstock 47, was an action of assumpsit by creditors of the Rossie Galena Company, a corporation created under the provisions of the laws of New York, against the defendant, McCullough, one of its stockholders to charge him as such, with a personal liability for the amount of their demand. By the statute of New York, under which said corporation was formed, it was provided that the stockholders of the corporation should be jointly and severally personally liable for the payment of all debts and demands contracted by the corporation, and that any person having any demand against such corporation may sue any stockholder or any director in any court having cognizance thereof, and recover the same with costs. The

defendants insisting that the action was for recovery of a for-
feiture or penalty, the remedy for which was barred after the
lapse of three years—pleaded the statute of limitations of
three years—to which the plaintiffs demurred, which was
sustained and judgment was rendered in favor of the plain-
tiff.

Upon a writ of error, the court of appeals, in an exhaus-
tive opinion, reviewing a very large number of authorities,
held that the personal liability imposed upon stockholders by
the statute, under which the corporation was created, was not
of the nature of a forfeiture or penalty, but was virtually and
in effect a liability on a contract, and the mutual agreement
of the parties; not indeed in the form of an express personal
contract, but an agreement of equally binding obligation,
consequent upon, and resulting from the acts and omissions,
or implied assent of the parties.

In *Hawthorn* v. *Calif*, 2 Wall. 10, it was held by the Su-
preme Court of the United States, that a statute repealing a
former statute which made the stock of stockholders in a
chartered company liable to the corporation's debts, is, as re-
spects creditors of the corporation existing at the time of the
repeal, a law impairing the obligation of contracts, and there-
fore void.

The case of *Story* v. *Furman*, 21 N. Y. 214, was a suit
brought by a receiver upon two judgments recovered by the
Herkimer County Bank against Woolgrowers' Manufacturing
Company, an incorporated company lawfully dissolved and
so declared, by its trustee, against Furman and others who
were stockholders therein to recover from them the amounts
equal to their share of the capital stock of said company, which
were necessary for the payment of the company's debts. Smith,
Justice, delivering the opinion of the court, says: "Every per-
son dealing with one of these manufacturing companies, or-
ganized under the Act of 1811 must also be held to trust to
the personal liability of its stockholders to the amount speci-
fied in the act of its incorporation, and such liability is part
of the contract, and such personal liability of the stock-
holders for the payment of the debts of the company to the
extent specified in the charter became and was one of the
terms of sale to the company of any property, and constituted

part of the security for any debt contracted by the company. The statute-liability is part of the obligation of the contract and is under the protection of the tenth section of the first article of the Constitution of the United States, which prohibits any State from passing any law impairing the obligation of contracts."

The obligation of the contract consists in the agreement or duty of the stockholders under this act to pay to the creditors of the corporation upon its dissolution an amount sufficient to pay its debts, to the extent of the respective shares of each stockholder in said company. This is the contract of the stockholders, and this is its obligation. This obligation was assumed by any purchaser of stock upon the transfer from the original corporator, and follows the stock as incident to its ownership.

In *Lowery* v. *Inman*, 46 N. Y. 119—the same principle is announced. The suit was brought by a bill holder, against the defendant, a stockholder in the N. W. Bank of Georgia, the charter of which made the private and individual property of each stockholder, as well as their joint property, liable for the redemption of the bills of the bank and for the payment of all its debts and liabilities. In this case the court of appeals held that the personal liability of the stockholders for the debts of a corporation by virtue of its charter, is not in the nature of a penalty or a forfeiture, and does not exist solely as a liability imposed by the statute, but it is regarded as voluntarily assumed by the act of becoming a stockholder; for by such act he assents to be bound, or that his property shall be charged with the debts of the corporation to the extent, and in the manner prescribed by the act of incorporation. The same doctrine is held by the Supreme Court of the United States in *Ochiltree* v. *The Railroad Company*, 21 Wall. 249.

The case of *Flash Lewis & Co.* v. *Conn*, 16 Florida 428, was an action at law brought in the State of Florida by a creditor of the Pensacola Lumber Company, a corporation formed in the State of New York under the provisions of an act of the Legislature of that State, passed in February, 1848, authorizing the formation of corporations for manufacturing and other purposes, whereby all the stockholders were made

severally and individually liable to the creditors of the company, to the amount of the stock held by them respectively for all debts and contracts made by said company, until it did certain specified acts, which were alleged never to have been performed, whereby and whereupon the stockholder was liable, &c.   In this case the supreme court of Florida, held that the liability of the stockholder grows out of his contract in becoming a stockholder, a liability in the first instance, and is not a penalty or forfeiture for non-performance of duties or acts of the officers, and that the courts of that State may enforce such contracts.

From a careful examination of the foregoing authorities, and of many others not herein cited, to which the learned counsel of the appellants and appellees have referred us, and especially from the adjudications of the supreme court of Ohio, we are brought to the following conclusions :

That the defendant stockholders of The Mingo Iron Works Company, are individually liable to the creditors of said company, if the same be necessary for the payment of its debts, in addition to their stock in an amount equal to the stock by them subscribed or otherwise acquired ;

That this liability is not in the nature of a penalty or of a forfeiture, but it arises out of the implied promise of the stockholders to assume and discharge the individual liability imposed by the statute under which the corporation was created ;

That this liability is not a primary resource or fund for the payment of the debts of the corporation ; that it is collateral and conditional to the principal obligation which rests upon the corporation, and is to be resorted to by the creditors, only in the case of the insolvency of the corporation, or where payment cannot be enforced against it by the ordinary process ;

That this liability is a security provided by law for the exclusive benefit of the creditors, over which the corporate authorities can have no control ; and that this liability is several in its nature, but the right arising out of this liability is intended for the common and equal benefit of all creditors of the corporation ;

And that in any suit instituted for the purpose of enforcing

this liability against the stockholders the corporation is a necessary part.

It remains for us to consider whether the liability herein declared to exist against the stockholders of the Mingo Iron Works Company is such a liability as can or ought to be enforced by the courts of this State against the defendant stockholders who are residents of this State, and who are not amenable to the jurisdiction of the courts of Ohio. It is contended by the counsel for the appellants that as the individual liability of the stockholders arises out of contract, and is not of the nature of a penalty, that upon the principle of comity the courts of this State ought to enforce and give effect to it. It is admitted that in ordinary cases, in matters of contract, where the remedy to be pursued is provided by the common law, and no specific remedy is prescribed by the laws of the place where the contract was made, the courts of one State *excomitate* will entertain jurisdiction and enforce such contract against its own citizens, if there be no statute in force prohibiting them from doing so, and the relief sought can be rendered and if it be not against the public policy of the State, within which such contract is sought to be enforced. But the courts of a State where the laws of a foreign State are sought to be enforced, will use a sound discretion as to the extent and mode of that comity. 56 N. H. 113; 20 W. M. 461.

A corporation must dwell in the place of its creation, and cannot migrate to another sovereignty, though it may do business in all places where its charter allows and the local laws do not forbid it. *Bank of Augusta* v. *Earle*, 13 Peters 588; *Railroad* v. *Koontz*, 104 U. S. 12. But wherever it goes it carries its charter, as that is the law of its existence. *Relf* v. *Rundel*, 103 U. S. 226 and the charter is the same abroad as at home. Whatever disabilities are placed upon the corporation at home must be recognized and submitted to by those who deal with it elsewhere. Every person who deals with a foreign corporation impliedly subjects himself to such laws of the foreign government affecting the powers and obligations of the corporation, with which he voluntarily contracts, as the powers and established policy of that government authorizes. To all intents and purposes he submits

his contract with the corporation to such a policy of the foreign government and whatever is done by that government in furtherance of that policy which binds those in like situation with himself who are subjects of the government, in respect to the operation and effects of their contract will necessarily bind him.   He is conclusively presumed to have contracted with a view to such laws of that government because the corporation must of necessity be controlled by them, and it has no power to contract with a view to any other laws, with which they are not in harmony.   109 U. S. 527.   *Payton* v. *Withers*, 5 Bissell U. S. C. C. R. 271.

It is a well settled rule of the common law that in the absence of any constitutional provision, or statute-law to the contrary there is no liability upon the stockholders of a corporation to pay its debts or liabilities.   The stock subscribed and paid in, with all other property real and personal owned by the corporation, constituted its assets, out of which all of its debts and liabilities are to be paid.

It is equally well settled that all constitutional or statutory provisions which impose a personal liability upon the stockholders for the payment of the corporation's debts, are to be strictly construed because they create in favor of its creditors a new right, which without such constitutional or statutory provision, could not exist.

In many of the cases referred to by the learned counsel, the statutes of the several States, under which the liability arose, *merely declared the liability to exist* and either prescribed no remedy or declared that the liabity migh be enforced by action, or action on the case leaving the creditor to select such common law remedies as might be in use within the jurisdiction in which the suit might be brought to enforce the liability.   *Ex parte Van Riper*, 20 Wend. 614;  *Flash &c* v. *Conn.  supra*;  *Corning* v. *McCollough, supra*;  *Patterson* v. *Wyomissing Manufacturing Co.*, 40 Pa. 117.

But it must be remembered that while the constitution and laws of Ohio under which The Mingo Iron Works Company was incorporated, in imposing upon its stockholders a personal liability, in addition to their stock—an amount equal to the amount of stock subscribed or otherwise acquired by them respectively, not only created in favor of the creditors

of that corporation, a *new right*, which without the constitution and laws of Ohio did not. and would not exist against the stockholders, the same statute prescribes the remedy whereby the same may be enforced, for by section 3260 of the Revised Statutes of Ohio, it is provided : " A stockholder or creditor may enforce such liability by action jointly against all the holders or owners of stock, which action shall be for the benefit of all the creditors of the corporation, and against all persons liable as stockholders; and in such action there shall be found and determined the amount payable by each person liable as such stockholder, on all the indebtedness of the corporation, in which adjudication, no costs shall be taxed to, nor collected of any stockholder to an amount which together with the amount to be paid on said indebtedness, will exceed the amount of stock on which he is liable."

By sections 5057, 5058 and 5059 of the Revised Statutes of Ohio, the forms of pleadings in civil actions in courts of record in that State are prescribed, and the common law forms of proceedings are in effect abolished, and every civil proceeding is in the form of a petition. Before the enactment of said section 3260, it was held by the supreme court of Ohio, in *Wright* v. *McCormack* and in *Umsted* v. *Buskirk*, *Supra*, that the action by a creditor to enforce the liability of stockholders should be for the benefit of all the creditors, and against all the stockholders, and the corporation should be a party ; and that the stockholders against whom this liability is sought to be enforced may insist on their co-stockholders being made parties for the purpose of a general account, and to enforce from them contribution. It is evident that by whatsoever name such proceeding may be called, it must of necessity be in substance and effect an equitable proceeding in the nature of a bill in equity. It seems equally clear, that the " action" given to a stockholder or creditor of a corporation by section 3260 to enforce this personal liability, must of necessity be a petition in the nature of a bill in equity, to which the corporation, its stockholders and creditors are necessary parties. And as the personal liability of the stockholders, is not the preliminary resource or fund for the payment of the debts and liabilities of the corporation, but is only collateral and conditional to the principal obliga-

tion which rests upon the corporation, and that the stockholders are only the sureties of the corporation, who can only be resorted to by the creditors, when the corporation is insolvent, or when payment cannot be enforced against it by ordinary process; it follows, that before any judgment or decree can be rendered against any stockholder by reason of his personal liability as such, the court must ascertain and determine who are the creditors of the corporation; the amount of their several debts or demands; who are the stockholders of the corporation, and the amount of stock held by each; when and how held or acquired; which of them are solvent and able to contribute their proper proportion towards the payment of the debts; the amount, character and location of the real and personal estate owned by the corporation, as well as the availability of such assets for the payment of its debts. And in case any of its assets should, as they most probably would, be found to consist of choses in action due to said corporation it would be the duty of the court to direct the same to be collected. It would also be necessary to direct the other personal estate and the real estate of the corporation to be sold, confirm the sales, order the collection of the purchase money, to call before it by proper proceedings all trustees and other fiduciaries, having property or funds under their control belonging to the corporation, and compel them to account for the same, and having done all this to direct the application thereof to the payment of the several creditors of the corporation according to their respective rights ascertained and determined in the proceedings.

When the court shall have judicially determined who are the solvent stockholders, the amount of stock held by each, the amount of all outstanding and unsatisfied debts due from the corporation to its several creditors, and shall have ascertained the amount of available assets belonging to the corporation, applicable to the payment of the debts, then, and not until then, can it rightfully render against such solvent stockholders judgment or decree for the whole, or any part of the amount for which he may be personally or individually liable as such stockholder. Until these facts are ascertained it is manifestly impossible to determine the amount each stockholder, as a surety of the corporation, will be obliged to contribute

towards the payment of said debts.  It is evident that the remedy given by section 3260 of the Ohio statutes, is the only remedy which could be resorted to in that State.  It is equally evident from the phraseology of said section 3260 that while it was the intention of the legislature to provide an adequate and complete remedy to the stockholders and creditors of such corporations to enforce their individual liability, it also intended that all questions necessarily involved in such a controversy should be settled in one suit, and that even in that suit the stockholders who might be held liable to contribute to the payment of debts should not be chargable with the payment of any costs, in any amount which together with the amount to be paid on said indebtedness, will exceed the amount of stock on which he is liable.  This restriction upon the liability to costs must have been allowed to obtain, because until such suit or action as was provided by section 3260, should be instituted and prosecuted, the stockholders could not be in default for they were not bound to pay until it was first ascertained and determined whether any part of the sums for which they were individually liable, was necessary for the payment of the debts of the corporation.  It will be observed that the remedy provided by section 3260, that the action to enforce this individual liability must be brought, not for the benefit of the plaintiff alone but for the benefit of all creditors of the corporation, and against all persons liable as stockholders, which includes not only "all such persons as appear by the books of the corporation to be such, but any equitable owner of stock although the stock appears on the books in the name of another."  R. S. Ohio, section 3259.  In such action there shall be found and determined the amount payable by each person liable as a stockholder on all the indebtedness of the corporation.  Now it is impossible to ascertain and determine all the indebtedness of the corporation unless the corporation itself is before the court charged with the duty of making this inquiry, and is subject to its jurisdiction.  It is equally clear that it is impossible for such court to determine the amount payable by each person liable as a stockholder on the indebtedness of the corporation unless it has jurisdiction not only over the corporation itself but also over its property, real and personal.

Dwelling in the place of its creation, all contracts made with the corporation must by legal intendment be made subject to the laws of its creation, and all persons contracting with it must be presumed to contract with reference to the remedies provided them by the State creating the corporation, and if these remedies are not as convenient and efficient as they might possibly have been made, they can have no rightful claim by law or comity to supplement such inefficient remedies by invoking the aid of the courts of a foreign State. They have contracted with reference to the advantages afforded them by the laws of the State under which the corporation was created, and no injustice is done them when they are obliged to be content with the remedies which the laws of the same State afford for the protection of their property and the enforcement of the rights thereby granted to them. From these considerations, and from the requirements of section 3260 it becomes apparent that the courts of the State of Ohio, where the Mingo Iron Works Company dwells, where its property is situated, where its books, papers and records have been kept, where its business was transacted, can alone acquire and exercise the jurisdiction over such corporation necessary to ascertain and determine the amount payable by each person liable as stockholder on all the indebtedness of the corporation. By the allegations of the bill it appears that the plaintiffs brought and prosecuted to final decree, in the court of common pleas of Jefferson county, Ohio, such an action as is prescribed by said section 3260 for the purpose of enforcing said personal liability against the stockholders of said corporation, and that in that action they exhausted the process of that court and took every step which could lawfully have been taken to obtain jurisdiction for that court over all the parties against whom that suit was brought, but only succeeded in obtaining jurisdiction over the corporation itself, and fifteen of its stockholders, whose names are given, and by its decree ascertained, as against them, that the unsatisfied debts of the corporation exceeded the amount of its assets by a sum equal to all the stock owned or held by all of its stockholders, and ascertained and fixed the liability of each of said fifteen stockholders, and decreed

against each of them for sums equal to the full amount of the stock owned by them respectively, but wholly failed to obtain jurisdiction over the defendant stockholders in this suit, residing within the jurisdiction of the municipal court of Wheeling; and because the remedy in the Ohio court prescribed by said section 3,260 failed to afford the plaintiffs complete relief by giving that court jurisdiction over the stockholder-defendants who resided in this State, the plaintiffs, by their suit in said municipal court, seek to supplement the remedy prescribed by the laws of Ohio, and to do in this State, what they would not be permitted to do in Ohio, that is, to bring a second suit against the same parties for the same purpose, seeking here the same relief as in all respects they sought to obtain by their action in Ohio.

We have already shown that the laws of Ohio under which the defendant corporation was created, imposing upon its stockholders an individual liability, as a security to its creditors, conferred upon said creditors a new right, and at the same time prescribed a remedy whereby the same may be enforced. In such cases it has been repeatedly held, that the remedy prescribed is the exclusive remedy for the enforcement of the right, and no other can be pursued. *Errickson* v. *Nesmith*, 15 Gray, 221 ; see also, *Same* v. *Same*, 4 Allen 233; *Lynch* v. *Merchants' National Bank*, 22 W. Va. 554. If then, the remedy prescribed by the laws of Ohio has been found inefficient to afford the plaintiffs the full measure of relief, which it was designed to give, and to which by the said laws they were justly entitled, this inefficiency does not result from any failure of public duty on the part of the courts of this State, or from any want of comity, but it is because the statute of the State of Ohio which confers the right, has been unable to provide a remedy which can be used beyond the limits of its own territory. But such omission does not require us, as a matter of comity, to afford another remedy which will operate oppressively on our own citizens. 15 Gray, *Supra.*

The case of *Errickson, &c.* v. *Nesmith, &c.*, 4 Allen 233, was a case almost parallel with the case under consideration. The plaintiffs, who were creditors of the Franklin Mills, a corporation organized under a charter obtained in New Hampshire, filed their bill in equity on behalf of all its creditors

in the State of Massachusetts, against the defendants who were stockholders in said corporation seeking to charge them with a personal liability for the payment of the debts of the corporation due said plaintiffs.   They alleged that such personal liability arose from certain provisions in the laws of New Hampshire which provided that the stockholders shall be jointly and severally liable for all debts and contracts of such corporation until the whole amount of the capital stock fixed by the company shall have been paid in, and until certain certificates shall be made and recorded, &c., which are not necessary to be here stated.   By the statute of New Hampshire passed on June 27, 1857—it was enacted that, " All legal proceedings hereafter commenced against any individual stockholder in any corporation in this State for the collection of a debt against said corporation shall be by a bill in chancery and not otherwise."

To this bill the defendants filed a general demurrer which was sustained, and this decree was sustained by the supreme court of Massachusetts.   Dewey, Judge, delivering the opinion of the court said, "Independently of the statute-provisions no responsibility would attach to the defendants; the corporation would alone be held the debtor.   The inquiry is whether these statute provisions of the State of New Hampshire can furnish a legal ground for the courts of Massachusetts to charge the defendants in a bill in equity with the payment of the indebtedness of the corporation to the plaintiffs. The further inquiry is whether a liability of this character fixed upon the stockholders of a manufacturing corporation wholly by the statutes of New Hampshire, the mode of enforcing it or the remedy being found wholly in such foreign statute, can be properly enforced in this State against one or more of our citizens who may have become stockholders in such foreign corporation.   When the statute confers a right, and prescribes a remedy, that particular remedy and that only can be pursued.   The only remedy given by the New Hampshire statute is a bill in equity, and such a bill means a bill in behalf of all the creditors, and against all the stockholders.   If this be so, we perceive at once strong reasons why such a bill should be brought in the State which created the corporation, and where the same is located by the

express terms of its charter, and where its place of business is. The effect of maintaining such a bill, is to draw before the court all the creditors of the corporation, all the stockholders, and necessarily as we should suppose, the principal debtor, the corporation itself. The fact of the residence of a single stockholder in Massachusetts, who might be liable in a New Hampshire corporation in common with a hundred stockholders residing there, would upon that hypothesis transfer to our jurisdiction all such stockholders, and all the creditors, and authorize us to hear and adjust all conflicting questions as to the indebtedness of the corporation who were stockholders and the equities between them.* * * * * * Before these debts against the corporation, if not already reduced to judgments against it, could be established by proceedings in the bill in equity, the corporation should have been made a party to the bill. But we have no jurisdiction that will reach such corporation out of this commonwealth, and having no assets here, the same is true of the stockholders residing in New Hampshire. A bill in equity in Massachusetts is therefore not the remedy intended by the statute of New Hampshire creating and regulating the liability of stockholders in a manufacturing corporation of New Hampshire. It is urged on the part of the plaintiffs that great practical evil may result from thus refusing to charge a party here, who is an actual stockholder of a corporation in New Hampshire, but who resides without its limits. To this it may be replied, that it would be a much more serious evil to hold that the whole matter of winding up the concerns of a bankrupt corporation of New Hampshire, ascertaining who are its creditors, who its stockholders, what is the amount of its assets, and how the same are to be distributed, should be transferred to the jurisdiction of Massachusetts by reason of the residence here of a single member of such corporation. There seems to be no practical mode of dealing with such corporation and its members, when seeking to charge the latter upon their statute-liability but to proceed in the manner prescribed by the statute creating such liability, and in the local jurisdiction, where the corporation was established, and carries on its business, and by whose local statutes alone the liability exists." The reasonings and conclusions of the

learned judge, in this case, which seems to be the exact counterpart of the one now under consideration, present the true question involved with such force and perspicuity, that we have not hesitated to quote largely from his opinion, as nothing we could say, could add to the force of his argument. The remedy prescribed by said section 3,260, requires the creditor who would charge the stockholder with this individual liability to do exactly what the statute of New Hampshire required should be done; and the prayer of the plaintiff's bill in the case now under consideration, requires the municipal court of Wheeling to do exactly what the supreme court of Massachusetts decided could not be done in the courts of that State, under a statute of New Hampshire, similar to that of the State of Ohio, under which we are asked to reverse the decree of said municipal court. In this case we have no means of bringing within the jurisdiction of our courts the defendant corporation, nor any of its stockholders, officers or agents residing out of this State; nor has the said corporation or any of its non-resident stockholders, officers or agents any property within this State, and we are unable to compel the defendant, George A. Dean, who is the assignee of said corporation under the insolvent laws of Ohio, to settle his accounts as such assignee or to control the application of any funds belonging to said corporation to the payment of its debts. It would therefore be a vain thing to entertain the plaintiff's bill, when we are unable to grant the relief prayed for; and we therefore conclude, that the statute law of Ohio having conferred upon the plaintiffs the right to charge the said stockholders with said individual liability and also prescribed the remedy whereby the same may be enforced, this remedy must be pursued in the courts of Ohio, where the corporation was created, organized and located; where its business was transacted, and by the local statutes of which State alone, this individual liability exists; and that the amount which each stockholder is liable to contribute for the payment of the debts of the corporation, must be ascertained and determined in the courts of Ohio, and that the same, for the reasons before stated cannot be ascertained and determined by the courts of this State. This conclusion renders it unnecessary to consider the question, whether the statute

of Ohio which imposes upon the stockholders of said corporation this individual personal liability, is in conflict with the policy and legislation of this State on the same subject, upon which no opinion is intended to be expressed. We are therefore of opinion that the municipal court of Wheeling did not err in sustaining the defendant's said demurrers to the plaintiff's amended bill, but the court should have dismissed the same without prejudice to any other proper proceeding which the plaintiff's may be advised to institute to ascertain and determine the extent of the individual liability, if any, existing upon the defendants, or any of them to pay the debts of the said corporation or to enforce any such liability properly ascertained; and that inasmuch as the plaintiffs elected to abide by their amended bill, and did not desire further to amend the same, the decree of the municipal court of Wheeling rendered herein on June 27, 1882, should be so amended, and when amended affirmed. It is therefore adjudged, ordered and decreed that the decree of the municipal court of Wheeling be, and the same is amended accordingly, and affirmed with costs and $30.00 damages, against the appellants in favor of the appellees who appeared and demurred to the plaintiff's bill.

AFFIRMED.